OPINION.
{¶ 1} Defendant-appellant, Thomas Frazier, appeals from convictions for domestic violence pursuant to R.C. 2919.25 and aggravated menacing pursuant to R.C. 2903.21. In his first assignment of error, he contends that the trial court erred by ordering that he remain in handcuffs during jury selection. He argues that, as a defendant acting without counsel, he was prejudiced by being seen in handcuffs when he was attempting to select an impartial jury, and that the handcuffs made it burdensome to handle his trial papers and to take notes. We find merit in this assignment of error, and we, therefore, reverse Frazier's convictions and remand the case for a new trial.
 {¶ 2} "[N]o person should be tried while shackled * * * except as a last resort." Illinois v. Allen (1970),397 U.S. 337, 344, 90 S.Ct. 1057. The presence of restraints tends to erode the presumption of innocence that our system attaches to every defendant. State v. Franklin, 97 Ohio St.3d 1,2002-Ohio-5304, 776 N.E.2d 26, at ¶ 79; State v. Morgan (1992),84 Ohio App.3d 229, 231-232, 616 N.E.2d 941.
 {¶ 3} This court recently stated, "The Sixth Amendment secures the defendant's right to confer with his counsel and to assist in his defense. The placing of restraints upon a criminal defendant during his trial may significantly affect the jury's perception of the defendant, and may thus infringe upon the presumption of innocence, by stripping the defendant of the physical indicia of innocence. Restraints may also impede the defendant's ability, and thus implicate his Sixth Amendment right, to confer with his counsel and to assist in his defense. Moreover, the use of restraints may `affront * * * the very dignity and decorum of judicial proceedings that the judge[,] [by imposing the restraints, was] seeking to uphold.'" State v.Leonard, 1st Dist. No. C-030492, 2004-Ohio-3323, quotingAllen, supra, at 344, 90 S.Ct. 1057.
 {¶ 4} While shackling is an extreme measure, in some circumstances it may be necessary for the safe, reasonable, and orderly progress of the trial, such as when a defendant presents a danger of violence or escape. The decision whether to impose restraints lies within the trial court's discretion. Franklin,
supra, at ¶ 79-80; Morgan, supra, at 231-232, 616 N.E.2d 941. Nevertheless, this court, in a case discussing the restraint of a defendant by a stun belt, stated that, because the use of restraints is an inherently prejudicial practice, courts should employ them only as a last resort and only when they are justified "by an essential state interest specific to each trial." Leonard, supra, at ¶ 45, quoting Allen, supra, at 344, 90 S.Ct. 1057, and Holbrook v. Flynn (1986), 475 U.S. 560,568-569, 106 S.Ct. 1340.
 {¶ 5} Further, while not "an absolute rule," the "preferred and encouraged practice" is for the trial court to hold a hearing prior to imposing restraints upon a defendant during any phase of a trial. With or without a hearing, an appellate court will not disturb the trial court's exercise of its discretion to impose restraints if the record demonstrates "a compelling need to impose exceptional security procedures." Franklin, supra, at ¶ 82; Leonard, supra, at ¶ 49. The violent nature of the crime for which a defendant is being tried does not, standing alone, justify the use of restraints. Leonard, supra, at ¶ 50.
 {¶ 6} Finally, while the decision lies within the trial court's discretion, the court must actually exercise its discretion. It cannot simply defer to the wishes of police officers or order restraints solely because of the defendant's status as an inmate. State v. Carter (1977),53 Ohio App.2d 125, 131, 372 N.E.2d 622; Brofford v. Marshall (C.A. 6, 1985),751 F.2d 845, 855; State v. Ward, 8th Dist. No. 81282, 2003-Ohio-3015, at ¶ 27; State v. Simmons (Dec. 20, 1995), 4th Dist. No. 94CA2281.
 {¶ 7} In this case, the court did not hold a hearing on the issue. The record shows that Frazier elected to represent himself, which was his constitutional right. See State v.Steele, 155 Ohio App.3d 659, 2003-Ohio-7103, 802 N.E.2d 1127, at ¶ 11. In discussing whether Frazier had knowingly and voluntarily waived his right to counsel, Frazier's standby counsel stated to the court that Frazier had been "beat up in jail," and that because of Frazier's obvious black eye, counsel "had some concerns that a jury might find because he fought in jail[,] he committed this offense."
 {¶ 8} Frazier subsequently moved that his handcuffs be removed during his trial. The court stated, "We will get to that in a minute," then continued to discuss Frazier's waiver of counsel. The court went on to state, "As far as the cuffs, the cuffs will be on. They will be in the front during the trial. My understanding is that the bailiffs would prefer to have them remain on." Frazier responded, "I find it difficult to go through my papers that I have written up with your [sic] cuffs on. I have no intention of escaping." The court told him that he would have to "deal with that." The court further stated that it had been "advised of" an "episode in the jail," and that removing the handcuffs was not "appropriate." Frazier remained in handcuffs for the duration of jury selection, but the record indicates they were removed for the greater part of the trial.
 {¶ 9} The record in this case does not demonstrate a compelling need to impose exceptional security measures. It is unclear whether the "episode at the jail" was, as Frazier's standby counsel had stated, an assault on Frazier or a fight in which he was the aggressor. It also appears that the trial court simply deferred to the wishes of the bailiffs.
 {¶ 10} The facts of this case stand in contrast to cases where the shackling of the defendant was upheld on appeal. In those cases, the record clearly demonstrated the need for restraints. For example, in State v. Richey, 64 Ohio St.3d 353,358, 1992-Ohio-44, 595 N.E.2d 915, abrogated on other grounds byState v. McGuire, 80 Ohio St.3d 390, 1997-Ohio-335,686 N.E.2d 1112, the defendant had repeatedly threatened to kill the prosecutor and the witnesses against him. In Franklin, supra, at ¶ 80-81, the defendant had demonstrated a propensity for violence. He had been convicted of three brutal murders and had stabbed a fellow inmate with a pen six times in a dispute over turning out a light. And the defendant's own expert witness had stated that the defendant was "a time bomb waiting to happen." InMorgan, supra, at 232-233, 616 N.E.2d 941, the defendant was the president of a white supremacy group. Another prisoner had reported that he had "very fast hands," and that he had reached out and broken a man's arm before anyone could get to him. The defendant had also made comments to the effect that he would not "be put back in prison again."
 {¶ 11} Further, Frazier suffered substantial prejudice from the restraints. This is not a case where the jury saw him briefly or inadvertently in shackles in the hallway. See, e.g., State v.Kidder (1987), 32 Ohio St.3d 279, 285-286, 513 N.E.2d 311;State v. Chitwood (1992), 83 Ohio App.3d 443, 448-450,615 N.E.2d 257; State v. Williams (Dec. 1, 1993), 1st Dist. No. C-920869. He was in front of the jury for a substantial amount of time and was forced to interact with the jury while in handcuffs, which could easily have impressed upon the jury before the trial even started that he was a dangerous individual. Yet the court could not have found him to be that dangerous since it allowed the handcuffs to be removed after voir dire.
 {¶ 12} The handcuffs also impeded Frazier's ability to go through his papers and, therefore, to effectively conduct voir dire. When he complained, the court simply told him he had to "deal with it." It made no attempt to use security measures that may have been less visible to the jury and less cumbersome to Frazier. See Morgan, supra, at 233, 616 N.E.2d 941; Kennedy v.Cardwell (C.A. 6, 1973), 487 F.2d 101, 111.
 {¶ 13} Under the circumstances, we hold that the trial court abused its discretion in ordering Frazier to be shackled for the voir dire without at least a hearing on the issue of the necessity of restraints. We sustain his first assignment of error, reverse his convictions and remand the case for further proceedings consistent with the law and this Opinion.
 {¶ 14} In his second assignment of error, Frazier raises issues related to sentencing. Our holding on the first assignment of error renders his second assignment of error moot, and we, therefore, decline to address it. See App.R. 12(A)(1)(c).
Judgment reversed and cause remanded.
Gorman and Sundermann, JJ., concur.