The STATE of Ohio, Appellee,

v.

FRAZIER, Appellant.

[Cite as *State v. Frazier,* 158 Ohio App.3d 407, 2004-Ohio-4506.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030686.

Decided Aug. 27, 2004.

408

Michael K. Allen, Hamilton County Prosecuting Attorney, and Emma Seta, Assistant Prosecuting Attorney, for appellee.

Michaela M. Stagnaro, for appellant.

HILDEBRANDT, Presiding Judge.

{¶ 1} Defendant-appellant, Thomas Frazier, appeals the judgment of the Hamilton County Municipal Court convicting him of three charges of violating a temporary protection order. He was convicted of the offenses after a bench trial.

{¶ 2} In March 2003, Frazier was charged with domestic violence and aggravated menacing. In conjunction with those charges, the trial court issued a criminal temporary protection order pursuant to R.C. 2919.26. The order listed the victim of the domestic violence and aggravated menacing as Rita Frazier. It listed as protected persons Rita Frazier and the couple's two children. The relevant portion of the order provided, "Defendant shall not initiate any contact with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, and babysitters. Contact includes, but is not limited, to telephone, fax, e-mail, voice mail, delivery service writings, or communications by any other means in person or through another person."

{¶ 3} At trial, the prosecution alleged that the domestic relations court in Hamilton County had issued a civil protection order under R.C. 3113.31. But the state did not offer a copy of the civil protection order into evidence. Instead, the state offered an order of continuance from the domestic relations court stating that the civil protection order it had issued on May 29, 2003, remained in effect.

{¶ 4} The trial testimony came from only one witness, Rita Frazier. Rita Frazier testified that three letters in Thomas Frazier's handwriting had been delivered to her residence by ordinary mail. She stated that she had received the first letter on May 14, 2003, and that the second and third letters were written and received after May 29, 2003.

{¶ 5} The letters, which were introduced into evidence, were all addressed to the family cat. In the letters, Thomas Frazier provided a somewhat rambling account of his life in jail as a result of his arrest, and ultimate conviction, for domestic violence and aggravated menacing. Frazier also purported to tell the cat that he missed the children and that he wished to see them and to take them to an amusement park. The letters also included musings about the family's everyday life before Frazier had been incarcerated.

{¶ 6} The defense rested without offering any evidence. The trial court found Thomas Frazier guilty of the three charges of violating a temporary protection order and sentenced him to three terms of 180 days' incarceration, to be served concurrently with each other and with the sentences for the underlying domestic-violence and aggravated-menacing convictions. This court subsequently reversed

the underlying convictions and remanded the cause for further proceedings on the ground that the trial court had erred in ordering Thomas Frazier to remain handcuffed in front of the jury.[1] There is no argument that our reversal of those convictions affects the instant appeal.

{¶ 7} In his first assignment of error, Thomas Frazier argues that the convictions were based upon insufficient evidence and were contrary to the manifest weight of the evidence. In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]

{¶ 8} R.C. 2919.27(A)(1) provides, "No person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code."

{¶ 9} In the case at bar, we agree that the convictions based upon the two letters that were written and sent after May 29, 2003, were based upon insufficient evidence. As the state itself asserts, the civil protection order went into effect on May 29, 2003. Pursuant to R.C. 2919.26(E)(2)(b), a criminal protection order is effective only until the occurrence of certain events, one of which is the "issuance of a protection order or the approval of a consent agreement, arising out of the same activities as those that were the basis of the complaint upon which the order is based, under section 3113.31 of the Revised Code." Thus, the criminal protection order expired upon the issuance of the civil protection order, and the only order in effect as of May 29, 2003 was the civil protection order.

{¶ 10} But the state failed to introduce into evidence the civil protection order. The state introduced only the order of continuance that referred to the civil order. And while the state argues that the terms of the civil order were identical to those of the criminal order, the record does not support the state's assertion. In the absence of the order itself, we cannot say that Thomas Frazier's actions in

---

1. See *State v. Frazier*, 1st Dist. Nos. C–030571 and C–030572, 2004-Ohio-4108, 2004 WL 1752917.

2. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819.

3. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

sending the letters constituted a violation of that order. Under these circumstances, the convictions in the cases numbered C–03CRB–20141B and C–03CRB–20141C were based upon insufficient evidence. Those convictions are accordingly reversed, and Thomas Frazier is discharged from further prosecution on those charges.

{¶ 11} We turn now to the charge based upon the letter received on May 14, 2003. We agree with the state that this charge was sustained by the evidence. Under the terms of the criminal protection order, Thomas Frazier was not permitted to have any contact with the residence occupied by Rita Frazier and the children. This order was in accordance with the trial court's statutory authority to impose "terms designed to ensure the safety and protection of the complainant, alleged victim, or the family or household member."[4] The state adduced evidence that Thomas Frazier had violated the order by sending a letter to the residence. And while the letter was addressed to the family cat, the court was justified in rejecting that transparent ruse and finding that Thomas Frazier was attempting to contact the persons listed in the protection order.

{¶ 12} We are mindful of the argument that the contents of the letter were fairly innocuous. There were no overt threats, and there was no indication that Thomas Frazier intended to contact the family in person. Nonetheless, given the context in which the letter was written, namely from a person jailed for domestic violence and aggravated menacing, the letter itself could have been reasonably deemed an attempt to defy the court's order and to cause Rita Frazier and the other members of the family emotional distress or psychological harm. Under these circumstances, the trial court could have concluded that the letter had violated the spirit, as well as the letter, of the protection order, and that the order's prohibition against such contact was proper to ensure the safety and protection of the family members under R.C. 2919.26(C)(1).

{¶ 13} In any event, there is no indication in the record that Thomas Frazier had attempted to attack the criminal protection order as overbroad or to otherwise contest its provisions. Similarly, he has cited nothing in the record to indicate that the circumstances of the issuance of the order were such that the no-contact provisions were unwarranted. Therefore, his violation of the clear mandates of the order was subject to prosecution, and we find no impropriety in the conviction. The finding of guilt in the case numbered C–03CRB–20141A must therefore remain undisturbed.

{¶ 14} In his second and final assignment of error, Thomas Frazier argues that the trial court erred in sentencing him to 180 days' incarceration on each of

---

4. R.C. 2919.26(C)(1).

the charges. First, our reversal and order of discharge in the cases numbered C–03CRB–20141A and C–03CRB–20141C necessarily entailed the vacation of the sentences with respect to those two convictions.

{¶ 15} As for the case numbered C–03CRB–20141A, we find no error in the sentence. In imposing a sentence in a misdemeanor case, the trial court must consider the factors set forth in R.C. 2929.22. Those factors include the nature and circumstances of the offense, the offender's history of criminal conduct, and the likelihood that the offender will commit crimes in the future. When a misdemeanor sentence is within the statutory limits, the trial court is presumed to have considered the required factors, absent a showing to the contrary by the defendant.[5] A misdemeanor sentence will not be reversed absent a showing that the trial court abused its discretion.[6] An abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.[7]

{¶ 16} In the case at bar, we cannot say that the court's sentence constituted an abuse of discretion. The trial court, on the record, stated that Thomas Frazier's contact with the family was in blatant disregard of the protection order. The court also noted that he had sent the letter while jailed for domestic violence and aggravated menacing. Thomas Frazier offered nothing substantive in the way of mitigation, maintaining only that he had been improperly convicted. Under these circumstances, the trial court's imposition of a concurrent 180–day sentence was not unreasonable, arbitrary, or unconscionable. The second assignment of error is overruled.

{¶ 17} The judgment in the case numbered C–03CRB–20141A is affirmed. The judgments in the cases numbered C–03CRB–20141B and C–03CRB–20141C are reversed, and Frazier is discharged from further prosecution in those cases.

Judgment accordingly.

GORMAN, J., concurs.

PAINTER, J., concurs in part and dissents in part.

PAINTER, Judge, concurring in part and dissenting in part.

{¶ 18} I concur in cases C–03CRB–20141B and C–03CRB–20141C. The state simply presented no evidence on these charges. But I dissent on the remaining charge.

---

5. *State v. Beachy*, 9th Dist. No. 02CA0020, 2003-Ohio-1285, 2003 WL 1338956, at ¶ 9.

6. Id. at ¶ 4.

7. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 19} I am not certain that the trial court had the authority to ban all nonharmful contact with other family members who were not alleged victims.[8] When the alleged offender has not been alleged to be a threat to his children, how can he be banned from contacting them?

{¶ 20} A court may issue a temporary protection order that contains terms designed to ensure the safety and protection of the complainant, alleged victim, or a family or household member.[9] Here, the court prohibited Frazier from contacting any members of his family, including by "telephone, fax, e-mail, voice mail, delivery service writings, or communications by any other means in person or through another person." This prohibition was not designed to ensure the safety and protection of anybody: the order was a shotgun where a rifle was needed.

{¶ 21} R.C. 2919.26(C)(1) states: "If the court finds that the safety and protection of the complainant, alleged victim, or any other family or household member of the alleged offender may be impaired *by the continued presence of the alleged offender*, the court may issue a temporary protection order * * * that contains terms designed to ensure the safety and protection of the complainant, alleged victim, or the family or household member * * *." (Emphasis added.) The statute is premised upon the need to *physically* separate the alleged offender from the alleged victim.

{¶ 22} A boilerplate order banning *any* contact with people who are not alleged to be in danger has no statutory or commonsense support. Can a defendant not arrange with someone—say a mother-in-law—to have money delivered for the support of his children? Is sending a note saying, "Here's some money to help while I'm locked out" and enclosing cash a violation? It would seem so. Sending a birthday gift to a child would also be contact. But the statute seems to focus on *physical* contact or proximity—the crime is physical harm. Of course, a phone call that includes a threat of imminent physical harm would itself be a crime.[10]

{¶ 23} But I am unable to agree with the majority's notion that "the letter itself could have been reasonably deemed an attempt to defy the court's order and to cause Rita Frazier and the other members of the family emotional distress or psychological harm." He simply said that he missed his children.

{¶ 24} Of course, Frazier did not challenge the terms of the TPO, or raise its possible invalidity in this appeal—in fact he signed the TPO, seemingly agreeing

8. See R.C. 2919.26(C)(1).

9. Id.

10. See R.C. 2917.21.

to its terms—so the issue awaits another day.  But I question whether the court overstepped its authority in issuing a shotgun ban on any contact.

{¶ 25} And Frazier's crime—if there was one—was obviously not the worst form of the offense.  When sentencing for a misdemeanor, "[a] court may impose the longest jail term * * * only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime." [11]

{¶ 26} While no findings on the record are necessary to support a maximum sentence for a misdemeanor, the record must actually support the sentence.  The record here does not demonstrate that Frazier's conduct or response to any prior sanctions warranted the maximum sentence.

{¶ 27} So the trial court must have found that sending innocuous letters addressed to a cat was the worst form of violating a TPO.

{¶ 28} I would hold that the trial court erred in sentencing Frazier to the maximum term, and remand for resentencing.  Or maybe we should hold that the conduct here was so innocuous that it is not a crime at all.

{¶ 29} Either way, I dissent from the majority's affirmance of the conviction in C–03CRB–20141A.

---

**11.**   R.C. 2929.22(C).