[Cite as *State v. Ledley*, 2010-Ohio-1260.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  14-09-39

    v.

TORRIE LEDLEY,                            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marysville Municipal Court
Trial Court No. TRD 0902991

Judgment Reversed and Cause Remanded

Date of Decision:  March 29, 2010

APPEARANCES:

    *Alison Boggs*  for Appellant

    *Tim Aslaner*  for Appellee

**SHAW, J.**

{¶1} Although originally placed on our accelerated calendar, we elect, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.

{¶2} Defendant-appellant, Torrie Ledley, appeals the October 2, 2009 judgment of the Marysville Municipal Court, finding her guilty of failure to stop after an accident involving property of others in violation of R.C. 4549.03(A), a misdemeanor of the first degree and, inter alia, suspending her driver's license for 180 days.

{¶3} On the night of June 16, 2009, at approximately 9:00 p.m., Ledley was driving along a wet roadway when she failed to stop at a stop sign at the intersection of Kinney Pike and Graham Jones Road in Union County, Ohio, and "clipped" a street sign, damaging it. Ledley failed to report her accident.

{¶4} Two days later, the Union County Sheriff's Office ("UCSO") received a report from the County Engineer's Office, informing the UCSO that the sign had to be replaced and that a license plate had been found near the sign when the road crew went to replace the sign. Deputy Louden of the UCSO investigated the incident and found that the plate was registered to Ledley. Later that morning he went to Ledley's home, and she admitted that she had struck the sign, causing the damage. Deputy Louden then cited Ledley with failure to stop after an accident involving property of others in violation of R.C. 4549.03(A).

{¶5} Initially, Ledley entered a not guilty plea to this charge. However, on October 2, 2009, Ledley indicated that she wanted to change her plea. The court discussed with Ledley what the prosecution's sentencing recommendation was going to be, which included a recommendation of thirty days in jail with all thirty days suspended. The court then stated: "Unless there's something unusual about the case, Mr. Parsons [the prosecutor], I treat these as OVI's that got away. So I probably would not adopt the Prosecutor's recommendation." In response, the prosecutor informed the court that there was no evidence that alcohol was involved, that Ledley cooperated with the investigating officer, and that his review of the relevant statutes did not indicate that a license suspension was authorized for this charge.

{¶6} After hearing from the prosecutor, the court asked Deputy Louden if he had any indication that alcohol was involved. Deputy Louden stated that he did not detect that alcohol was involved but that he did not interact with Ledley the night of the incident. The court then asked Ledley if she still wanted to change her plea, she stated that she did, and the court proceeded to accept her plea after finishing its plea colloquy with her. After this exchange, the prosecution asked the court to follow its sentencing recommendation, and Ledley explained what happened when she struck the sign. Ledley informed the court that no alcohol was involved, that it was raining, her "tires were bald," her "brakes were shot," and

that when she came upon the curve in the road and hit her brakes she hit the sign. She then apologized and asked that the court not suspend her license.

{¶7}   Prior to sentencing Ledley, the trial court stated:  "Well, I notice it took two days before it was reported.  Based upon that, as I said, Ms. Ledley, my attitude is that these are the drunk drivers that got away.  So I'm going to sentence you accordingly."  The court then sentenced her to thirty days in jail with twenty-seven of those days suspended, a $600.00 fine with $300.00 suspended, ordered that she pay restitution of $344.42 and court costs, and suspended her driver's license for 180 days with driving privileges ten hours a day, five days a week. This appeal followed, and Ledley now asserts one assignment of error.

> **THE TRIAL COURT ABUSED ITS DISCRETION AND WAS CONTRARY TO LAW, WHEN IT SUSPENDED APPELLANT'S DRIVER'S LICENSE AFTER DEFENDANT PLED GUILTY TO A VIOLATION OF O.R.C. 4549.03, WHEN THAT STATUTE DOES NOT GIVE THE COURT THE AUTHORITY TO SUSPEND A DRIVER'S LICENSE.**

{¶8}   This Court has previously held that "a misdemeanor sentence will not be disturbed on appeal unless the trial court abused its discretion."  *State v. Rexroad*, 3rd Dist. No. 16-08-21, 2009-Ohio-1657, citing *State v. Frazier*, 158 Ohio App.3d 407, 815 N.E.2d 1155, 2004-Ohio-4506, ¶ 15.  Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶9} The Revised Code states that, when sentencing on a misdemeanor, a trial court shall be guided by the purposes of misdemeanor sentencing: to protect the public from future crime and to punish the offender. R.C. 2929.21(A). Among the non-residential sanctions that a court may impose upon a misdemeanant, R.C. 2929.27(A)(13) permits a court to suspend the offender's privilege to operate a motor vehicle. However, a court may only suspend this privilege "*[i]f authorized by law[.]*" (Emphasis added.) R.C. 2929.27(A)(13).

{¶10} Revised Code section 4549.03(B) states: "Whoever violates division (A) of this section is guilty of failure to stop after an accident involving the property of others, a misdemeanor of the first degree." Nothing in R.C. 4549.03 authorizes a court to suspend the driver's license of a person who violates this section unlike various other offenses contained in Title 45 regarding violations of the law involving motor vehicles. For instance, R.C. 4549.02, entitled Stopping after accident; exchange of identity and vehicle registration, and R.C. 4549.021, entitled Stopping after accident involving injury to persons or property, specifically mandate that a trial court impose a class five suspension of the offender's driver's license under certain circumstances. However, another example, R.C. 4511.75, entitled Stopping for school bus; signals, provides that a court *may* impose a class seven driver's license suspension on an offender. R.C. 4511.75(F)(2). Yet, R.C. 4549.03 contains no similar provision.

{¶11} Given the General Assembly's decision to designate which offenses it renders worthy of a license suspension and its specific language in R.C. 2929.27(A)(13) that a license suspension for misdemeanors is allowed *if* authorized by law, we find that a license suspension for a violation of R.C. 4549.03(A) is not authorized. Therefore, the trial court did not have authority to suspend Ledley's license in the case sub judice.

{¶12} Additionally, we note that Ledley did not raise any issue on appeal from any part of the sentence other than the license suspension. However, the court's statements, on the record, that it considers these types of offenses to be "drunk drivers that got away," absent any indication, other than damage to a street sign, that alcohol was involved would seem to indicate a sentencing process that is not based upon any facts in the record related to the offense for which Ledley was being sentenced. Such a process is both arbitrary and unreasonable as a matter of law. Accordingly, we find that not only was Ledley's driver's license suspension unauthorized by law, it was also an abuse of the court's discretion in sentencing.

{¶13} For these reasons, the assignment of error is sustained and the judgment of the Marysville Municipal Court, suspending Ledley's driver's license for 180 days, is reversed and the cause remanded for further proceedings consistent with this opinion.

***Judgment Reversed and***
***Cause Remanded***

**WILLAMOWSKI, P.J., and ROGERS, J., concur.**

**/jlr**