OPINION *Page 2 
{¶ 1} Defendant-appellant, Carl Rexroad (hereinafter "Rexroad"), appeals the judgment of the Wyandot County Court of Common Pleas sentencing him to two concurrent maximum jail sentences, totaling 180 days; the maximum operator's and commercial operator's license suspension of five years; and the completion of a psychological assessment. For the reasons that follow, we affirm.
 {¶ 2} On July 3, 2007, at approximately 4:00 a.m., Rexroad was operating a dump truck and approached the intersection of the new Route 30 and Township 78. This particular intersection had been under construction at the time, and while Rexroad slowed down at the intersection, he never came to a complete stop. Once he entered the intersection, an oncoming vehicle approaching from the south, carrying three passengers, collided with Rexroad's truck. As a result of the collision, two of the three passengers died.
 {¶ 3} On August 24, 2007, Rexroad was indicted on two counts of vehicular homicide in violation of R.C. 2903.06(A)(3)(a), misdemeanors of the first degree. Rexroad initially pled not guilty, but on August 15, 2008, Rexroad changed his plea to no contest to both of the charges and was subsequently found guilty. A sentencing hearing was held on October 30, 2008. Rexroad's counsel made a statement in mitigation of sentence and submitted a letter from Dr. Roy William Harris, which detailed Rexroad's current multiple medical conditions. *Page 3 
Four individuals also made sworn statements on Rexroad's behalf, and Rexroad read a statement to the trial court. The State presented testimony from two law enforcement officers and a construction company's safety manager. In addition, the victim advocate read statements from the parents of the deceased victims. As per its plea agreement, the State made a recommendation for a jail sentence and a license suspension, but deferred to the trial court as to the exact length of jail time and license suspension.
 {¶ 4} After admitting the pre-sentence investigation report (hereinafter "PSI") into evidence, the trial court sentenced Rexroad to community control for a period of two years. In addition, it ordered Rexroad to serve a term of 180 days on each count, which were to run concurrently. Moreover, the trial court suspended Rexroad's operator's license and commercial operator's license for the maximum period of five years and assessed six points to his license. Finally, the trial court ordered Rexroad to complete a psychological assessment and successfully complete any program of treatment recommended.
 {¶ 5} Rexroad now appeals and raises three assignments of error.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT'S DECISION TO SENTENCE CARL REXROAD TO THE MAXIMUM SENTENCE WAS AN ABUSE OF DISCRETION WHEN APPLYING THE MISDEMEANOR SENTENCING GUIDELINES. *Page 4 
 {¶ 6} In his first assignment of error, Rexroad argues that the trial court erred when it sentenced him to the maximum jail sentence of 180 days. He states that according to R.C. 2929.22, a trial court may only give the maximum sentence for a misdemeanor offense if the offender committed the "worst form of the offense" or upon those offenders whose conduct demonstrate the necessity "to deter the offender from committing a future crime." Rexroad claims that the facts of his case do not justify the imposition of the maximum jail sentence.
 {¶ 7} Trial courts have discretion in weighing the applicable sentencing factors and imposing a sentence consistent with the purposes of misdemeanor sentencing set forth in R.C. 2929.21(A). State v.Friesen, 3d Dist. No. 3-05-06, 2005-Ohio-5760, ¶ 11. Thus, a misdemeanor sentence will not be disturbed on appeal unless the trial court abused its discretion. State v. Frazier, 158 Ohio App.3d 407, 2004-Ohio-4506,815 N.E.2d 1155, ¶ 15. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 158,404 N.E.2d 144.
 {¶ 8} R.C. 2929.22 lists factors that a sentencing court, after considering the purposes of misdemeanor sentencing under R.C. 2929.21, must consider when it imposes a sentence. In particular, R.C. 2929.22(B)(1) and (2) provide: *Page 5 
 (B)(1) In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors:
 (a) The nature and circumstances of the offense or offenses;
 (b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;
 (c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;
 (d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;
 (e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section.
 (B)(2) In determining the appropriate sentence for a misdemeanor, in addition to complying with division (B)(1) of this section, the court may consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code.
 {¶ 9} In addition, R.C. 2929.22(C) provides:
 (C) Before imposing a jail term as a sentence for a misdemeanor, a court shall consider the appropriateness of imposing a community control sanction or a combination of community control sanctions under section 2929.25, 2929.26. 2929.27, and *Page 6 2929.28 of the Revised Code. A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime.
 {¶ 10} Although the preferred practice is for the trial court to affirmatively state on the record that it considered the criteria set forth in R.C. 2929.22, "the statute does not mandate that the record state that the trial court considered the applicable statutory factors."State v. Collins, 3d Dist. Nos. 1-05-15, 1-05-21, 2005-Ohio-4755, ¶ 12. As such, this Court will presume the trial court considered the criteria set forth in R.C. 2929.22 when: the sentence at issue is within the statutory limits; and there is no affirmative showing that the trial court failed to consider the applicable statutory factors. Id., citingState v. Ramirez, 3d Dist. Nos. 13-04-30, 13-04-31, 2005-Ohio-1430, ¶ 30;State v. Ward, 3d Dist. Nos. 1-03-70, 1-03-73, 1-03-74, 1-03-75, 2004-Ohio-4156, ¶ 10; State v. Kelly, 2nd Dist. No. 2004 CA 122,2005-Ohio-3058, ¶¶ 25-26; City of Maple Heights v. Sweeney, 8th Dist. No. 85415, 2005-Ohio-2820, ¶¶ 8-10; State v. Adams, 5th Dist. No. 2002 CA 00089, 2003-Ohio-3169, ¶ 16; State v. Polick (1995),101 Ohio App.3d 428, 431, 655 N.E.2d 820.
 {¶ 11} Here, Rexroad was charged with two counts of vehicular homicide under R.C. 2903.06(A)(3)(a), misdemeanors of the first degree, which pursuant to *Page 7 
R.C. 2929.24(A)(1) subjected him to a jail sentence of not more than 180 days. The trial court sentenced Rexroad to 180 days as to each count, and ordered them to run concurrently. Thus, the respective sentences imposed on Rexroad fall within the statutory limits, R.C. 2929.24(A)(1), and there is no affirmative indication in the record that the trial court failed to consider the applicable factors set forth in R.C. 2929.22. Accordingly, we presume the trial court considered the criteria set forth in R.C. 2929.22. Nevertheless, even without this presumption, after a review of the transcript of the sentencing hearing, we find that the trial court did consider each of the relevant sentencing factors.
 {¶ 12} Rexroad claims that the facts do not demonstrate that his offense was the worst form of the offense or that he would reoffend again, which would be the only reasons to justify imposing the maximum jail sentence. Again, trial courts have discretion in weighing the applicable sentencing factors and imposing a sentence consistent with the purposes of misdemeanor sentencing set forth in R.C. 2929.21(A).Friesen, 2005-Ohio-5760, at ¶ 11. Here, the trial court heard testimony regarding the cause of the accident, Rexroad's personal statement to the court, arguments from both counsel, and statements from family and friends of the victims and Rexroad. After hearing all of the testimony, and considering the information contained in the PSI, the trial court addressed the parties and emphasized the nature and circumstances of the offense: *Page 8 
 Defendant chose to get into a large vehicle that was loaded and was over weight limits, and the Court can only imagine that it would be difficult to maneuver and stop. Defendant made this choice even though he had been cited two years earlier for making that same poor choice. Defendant chose not to come to a stop at a posted stop sign to see if there were any vehicles on the roadway that had the right-of-way. Defendant failed to take time for safety. Defendant chose, upon seeing headlights, to speed up to beat the vehicle rather than stop or slow his vehicle or maneuver it in some other direction. A vehicle, Defendant acknowledged that didn't have a lot of pick up.
(Nov. 5, 2008 JE at 3-4); (Oct. 30, 2008 Tr. at 64-65). In addition, it addressed Rexroad's lack of a criminal history, and acknowledged that while Rexroad may not have set out to kill anyone that night, "he made intentional choices that night and was indifferent to the consequences." (Nov. 5, 2008 JE at 4); (Oct. 30, 2008 Tr. at 65-66). Furthermore, the trial court considered the victims in this case:
 It is known that the Defendant's victims were young, were out past curfew, they had been drinking . . . kids are known for making poor choices. That is why we treat them differently because they haven't had the life experiences to impress upon them that rules are made for a purpose, to protect them and others. They made poor choices on that night, and paid for those poor choices, one being injured and the other two with their lives.
(Nov. 5, 2008 JE at 3); (Oct. 30, 2008 Tr. at 64). Moreover, the trial court questioned Rexroad's actions and his statements of remorse throughout the proceedings:
 Defendant chose to blame his victims; to wear a shirt within days of the accident that contained a statement that encouraged the very activity that helped create this accident. *Page 9 
 * * *
 Defendant says he is remorseful, but offers excuses, different stories, blames his victims. [S]ome of what he has said, some of what he has done, not only this day but at the change of plea hearing, has this Court questioning some of the genuineness of that remorse.
(Nov. 5, 2008 JE at 3-4); (Oct. 30, 2008 Tr. at 64-66). Overall, the trial court imposed two years of community control and 180 days as to each count, which were to be served concurrently, and it specifically stated that "[t]he [jail] sentence imposed [was] due to the seriousness of the offense and the Defendant's conduct." (Nov. 5, 2008 JE at 5); (Oct. 30, 2008 Tr. at 67).
 {¶ 13} We find that the conclusions made by the trial court are supported by the record. In particular, we note that at the sentencing hearing, a Wyandot County Sheriff's deputy testified that on September 3, 2007, he saw Rexroad wearing a t-shirt with "a cartoonist drawing on the back of a dump truck, and around the dump truck it read, `Fill them like box cars, drive them like stock cars.'" (Oct. 30, 2008 Tr. at 48-49). When the deputy inquired as to why Rexroad would wear such a t-shirt, Rexroad laughed and said, "it wasn't something he would be wearing to court." (Id.). Even though Rexroad had no prior criminal history and may have not had the intent to kill anyone that night, the significance of his obvious negligent action and the consequences that ensued were readily apparent. The record clearly supports the conclusion that it was reasonable for the *Page 10 
trial court to have imposed the maximum jail sentence. Thus, we cannot conclude that the trial court abused its discretion by imposing the maximum jail sentence.
 {¶ 14} Rexroad also argues in his first assignment of error that the trial court erred when it imposed both the community control and the maximum jail sentence. Rexroad claims that it was contradictory for the trial court to have found him amenable to community control, but then also impose the maximum jail sentence.
 {¶ 15} We acknowledge that under R.C. 2929.22(C), a trial court must consider the appropriateness of imposing a community control sanction before it imposes a jail term as sentence for a misdemeanor. However, R.C. 2929.22(A) also gives the trial court the power to impose a combination of sanctions under R.C. 2929.24 to 2929.28. R.C. 2929.25(A)(1)(a) explicitly states that even if the trial court imposes a jail term as a sentence, "the court may impose any community control sanction or combination of community control sanctions in addition tothe jail term" (emphasis added). Thus, we cannot find that it was an abuse of discretion for the trial court to have imposed both community control and a jail sentence on Rexroad since it was within its power to do so.
 {¶ 16} Therefore, Rexroad's first assignment of error is overruled. *Page 11 
 ASSIGNMENT OF ERROR NO. II THE COURT ERRED BY ORDERING THE MAXIMUM LICENSE SUSPENSION.
 {¶ 17} In his second assignment of error, Rexroad argues that the trial court erred in imposing the maximum term for a license suspension. He emphasizes the fact that he has a virtually spotless driving record, and claims that the facts of this case did not justify imposing the maximum term for a license suspension.
 {¶ 18} Again, we review a misdemeanor sentence under an abuse of discretion standard of review. Frazier, 2004-Ohio-4506, at ¶ 15. R.C. 2903.06(C) provides, in pertinent part, that:
 [w]hoever violates division (A)(3) of this section is guilty of vehicular homicide * * * In addition to any other sanction imposed pursuant to this division, the court shall impose upon the offender a class four suspension of the offender's driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege from the range specified in division (A)(4) of section 4510.02 of the Revised Code.
The definitive range prescribed in R.C. 4510.02(A)(4) for a class four suspension is a period of one to five years.
 {¶ 19} Here, because Rexroad was found guilty of vehicular homicide in violation of R.C. 2903.06(A)(3), the trial court was required to impose a class four suspension. The trial court imposed a five year suspension on Rexroad, which was to begin on October 30, 2008. (Nov. 5, 2008 JE at 5); (Oct. 30, 2008 Tr. at *Page 12 
67). This particular license suspension was within the permissible statutory range. Moreover, we note that this was not Rexroad's only commercial driving citation; the PSI indicates that in 2006 Rexroad obtained a "commercial driver (overload)" conviction on his record. (PSI). Thus, we do not find that the trial court's decision was an abuse of discretion.
 {¶ 20} Rexroad's second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III THE COURT ERRED BY ORDERING AS A SPECIAL CONDITION OF COMMUNITY CONTROL THAT THE APPELLANT SUBMIT TO A PSYCHOLOGICAL EXAMINATION AND BE REQUIRED TO FOLLOW ANY RECOMMENDED FOLLOW-UP TREATMENT.
 {¶ 21} In his last assignment of error, Rexroad claims that the trial court erred in imposing a psychological examination as a condition of his community control. Rexroad claims the trial court had no authority to impose a psychological examination as one of his community control sanctions. Moreover, he claims that the record is devoid of any basis that justifies a psychological examination. As such, Rexroad asks that the specific condition be vacated.
 {¶ 22} A trial court is given broad discretion in imposing community control conditions; therefore, we will not disturb a trial court's community control sentence absent an abuse of discretion. State v.Niepsuj, 9th Dist. No. 21991, *Page 13 2004-Ohio-6531, ¶¶ 5-9, citing R.C. 2929.25. In particular, R.C. 2929.27(B) provides:
 In addition to the sanctions authorized under division (A) of this section, the court imposing a sentence for a misdemeanor, other than a minor misdemeanor, upon an offender who is not required to serve a mandatory jail term may impose any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing.
Moreover, in R.C. 2929.25(B)(2), when imposing conditions of community control on an offender, the trial court "[i]n the interest of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, [] may impose additional requirements on the offenders." However, a trial court's power in imposing community control conditions is not limitless. See Niepsuj, 2004-Ohio-6531, at ¶ 5, citing State v.Livingston (1976), 53 Ohio App.2d 195, 196, 372 N.E.2d 1335. A trial court should consider whether the condition it imposes "(1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." State v.Jones (1990), 49 Ohio St.3d 51, 53, 550 N.E.2d 469.
 {¶ 23} In this case, Rexroad takes issue with the following community control condition placed on him by the trial court, "6. Defendant shall complete a psychological assessment and successfully complete any program of treatment *Page 14 
recommended." (Nov. 5, 2008 JE at 5); (Oct. 30, 2008 Tr. at 67-68). While Rexroad claims the trial court had no authority to impose a psychological examination as one of his community control sanctions, we believe that based on the above statutory language, it was within the trial court's discretion to impose an additional condition provided it was reasonably related to rehabilitating the offender, had some relationship to the offense, and was reasonably related to Rexroad's future criminality. Under the facts of this case, we believe that the condition was appropriate.
 {¶ 24} The trial court expressly stated its concern with Rexroad's lack of genuine remorse a number of times throughout the sentencing hearing:
 Defendant chose to blame his victims; to wear a shirt within days of the accident that contained a statement that encouraged the very activity that helped create this accident.
 * * *
 Defendant says he is remorseful, but offers excuses, different stories, blames his victims.
 * * *
 While the Court does not believe the Defendant set out to kill anyone that night, he made intentional choices that night and was indifferent to the consequences. Defendant says he is remorseful, however, some of what he has said, some of what he has done, not only this day but at the change of plea hearing, has this Court questioning some of the genuineness of that remorse. *Page 15 
(Nov. 5, 2008 JE at 3-4); (Oct. 30, 2008 Tr. at 64-66). We find that there is evidence in the record and in the PSI to support the trial court's concerns. Furthermore, this Court notes that at the sentencing hearing and in his statement to the court in the PSI, Rexroad emphasized the impact that the accident has had on him:
 I was in shock and could not believe what had just happened. * * * The whole incident has been a nightmare and a tragedy * * * my life will never be the same * * * It has destroyed my health with all this regret and sorrow. * * * I realize what friends and families go through and am devastated by the heartache this accident has caused.
(Oct. 30, 2008 Tr. at 22-24); (PSI). Rexroad's negligent actions resulted in the death of two teenagers, and given his statement to the trial court and his multiple medical issues, we believe it was reasonable for the trial court to have concluded that Rexroad may need additional help. Therefore, we find that the trial court did not abuse its discretion when it imposed the psychological examination condition as part of Rexroad's community control.
 {¶ 25} Rexroad's third assignment of error is, therefore, overruled.
 {¶ 26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
WILLAMOWSKI and SHAW, J.J., concur. *Page 1